BLANK ROME LLP
Ana Tagvoryan (SBN 246536)
ATagvoryan@BlankRome.com
Neeru Jindal (SBN 235082)
NJindal@BlankRome.com
Harrison Brown (SBN 291503)
HBrown@BlankRome.com
2029 Century Park East, 6th Floor
Los Angeles, California 90067
Telephone:   424.239.3400
Facsimile:   424.239.3434

Attorneys for Defendant
YTEL, INC.

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA C. DE LA CABADA and DEBRA WILLIAMS, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　vs.<br><br>YTEL, INC., a California corporation,<br><br>　　　　　　　　　　Defendant. | Case No. 3:19-cv-07178-JSC<br><br>(Assigned to Magistrate Judge Jaqueline Scott Corley)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**Federal Rules of Civil Procedure 12(b)(6)**<br><br>[Filed concurrently with (Proposed) Order and Proof of Service]<br><br>Date:　　　　March 5, 2020<br>Time:　　　　9:00 a.m.<br>Courtroom:　F, 15th Fl.<br><br>Complaint Filed:　　October 30, 2019 |

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on March 5, 2020, at 9:00 a.m., before the Hon. Jaqueline Scott Corley, located at the San Francisco Courthouse, Courtroom F—15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Ytel, Inc. ("Ytel") will and hereby does move to dismiss the First Amended Class Action Complaint ("FAC") of Plaintiffs Laura C. De La Cabada and Debra Williams ("Plaintiffs") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The foundation of Ytel's motion is that Plaintiffs fail to plead facts supporting their conclusory claims in the FAC that Ytel is directly liable to Plaintiffs, or that Ytel is not a common carrier, therefore failing to state a claim under the Telephone Consumer Protection Act ("TCPA").

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, and the records and pleadings in this action.

DATED:  January 30, 2020           BLANK ROME LLP

                                   By: */s/ Ana Tagvoryan*
                                       Ana Tagvoryan
                                       Neeru Jindal
                                       Harrison Brown
                                       Attorneys for Defendant,
                                       YTEL, INC.

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................................1

II. SUMMARY OF ALLEGATIONS .........................................................................................2

    A. Yakim Manasseh Jordan and Manasseh Jordan Ministries .........................................2

    B. Ytel................................................................................................................................2

    C. Plaintiffs' Claims ..........................................................................................................3

    D. The 2016 Molitor Action ..............................................................................................4

III. LEGAL STANDARD .............................................................................................................5

IV. THE FAC SHOULD BE DISMISSED...................................................................................5

    A. Plaintiffs Do Not Provide Clear Notice of the Conduct They Attribute to Ytel Because They Make Contradictory Allegations as to the Roles of Ytel and MJM. .............................................................................................................................5

    B. The Facts Pled by Plaintiffs Do Not Establish that Ytel is Directly Liable..................8

    C. Ytel Is a Mere Common Carrier and Exempt from Liability......................................10

V. CONCLUSION......................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................... 5

*Bauman v. Saxe*,
   No. 2:14-cv-01125-RFB-PAL, 2019 WL 591439 (D. Neb. Feb. 13, 2019) ................... 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................... 5

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752 (1992) ....................................................................................... 10, 11

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015) ...................................................................................... 8, 9

*Jackson v. Caribbean Cruise Line, Inc.*,
   88 F. Supp. 3d 129 (E.D.N.Y. 2015) .............................................................................. 5, 8

*Jeffrey Molitor, et al. v. Manasseh Jordan Ministries, Inc., et al.* .
   (Dkt #11-1.) .......................................................................................................... 4, 7, 10, 11

*Kauffman v. CallFire, Inc.*,
   141 F. Supp. 3d 1044 (S.D. Cal. 2015) ......................................................................... 10, 12

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct.
   2615 (2019) ......................................................................................................................... 3

*Klein v. Just Energy Grp., Inc.*,
   No. 14-1050, 2016 WL 3539137 (W.D. Pa. June 29, 2016) ............................................. 5

*Kristensen v. Credit Payment Servs.*,
   12 F. Supp. 3d 1292 (D. Nev. 2014) .................................................................................. 5

*Kwan v. Sanmedica Int'l*,
   854 F.3d 1088 (9th Cir. 2017) ............................................................................................ 5

*Melito v. Am. Eagle Outfitters, Inc.*,
   No. 14-02440, 2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015) ........................................ 5, 6

*Reese v. Marketron Broad. Sols., LLC*,
   No. 17-9772, 2018 WL 279633 (E.D. La. Jan. 3, 2018) .................................................... 6

*Rinky Dink, Inc. v. Elec. Merch. Sys.*,
   No. 13-1347, 2015 WL 778065 (W.D. Wash. Feb. 24, 2015) .................................... 10, 11

*Thomas v. Taco Bell Corp.*,
  879 F. Supp. 2d 1079 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014) ..........................6

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ................................................................................................5

*Weisbuch v. Cnty. of L.A.*,
  119 F.3d 778 (9th Cir. 1997) ................................................................................................5

**Statutes**

47 U.S.C. § 227 ................................................................................................................................4

47 U.S.C. § 227(b) ..........................................................................................................................5

47 U.S.C. § 227(b)(1)(A)(iii) ..........................................................................................................5

**Other Authorities**

*Rules and Regulations Implementing the TCPA of 1991*, 68 F.R. 44144-01, 44169 at ¶
  138 (July 25, 2003) ...............................................................................................................11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Laura C. De La Cabada and Debra Williams ("Plaintiffs") bring this lawsuit against Defendant Ytel, Inc. ("Ytel") despite knowing that the conduct at-issue in their First Amended Complaint ("FAC") has nothing to do with Ytel, a communications service provider. Plaintiffs take issue with phone calls and text messages they allegedly received from third-party Manasseh Jordan Ministries and Yakim Manasseh Jordan (collectively, "MJM"), whom Ms. De la Cabada sued in a 2016 putative class action for TCPA violations in connection with nearly identical phone calls and text messages.[1] Ms. De la Cabada admitted in that lawsuit that *MJM was responsible* for making and initiating the calls and texts.

Despite the fact that Ms. De la Cabada alleged in the 2016 class action that MJM, alone, made or initiated calls and texts, Ms. De la Cabada and Ms. William now cannot make up their minds as to who they believe made or initiated calls or texts. Every fact recited by Plaintiffs in the instant FAC suggests that MJM made or initiated the calls or texts at issue in this case. But at the same time, Plaintiffs allege in a conclusory fashion that Ytel makes and initiates calls. Plaintiffs' confusing and contradictory allegations leave Ytel guessing as to what role Plaintiffs allege Ytel played in the conduct at issue. Under case law interpreting the TCPA and as a matter of common sense, a phone call or text message can be made or initiated by only one party. While another party could be held liable for an illegal call or text message if certain conditions are met, it is physically impossible for two parties to make or initiate the same call or text message. Plaintiffs' contradictory allegations thus necessitate dismissal.

To the extent Plaintiffs believe that Ytel is directly liable, Plaintiffs plead no facts in support of their contention. Plaintiffs do not allege any facts which suggest that Ytel, a provider of communication services to a wide range of businesses, actually dialed Plaintiffs or sent Plaintiffs messages about prayer. Nor do Plaintiffs plead any facts which suggest that Ytel controlled the

---

[1] Ultimately, De la Cabada obtained a default judgment against MJM in early 2019, but her years of litigation was a pyrrhic victory as she has been unable to collect on her judgment.

content of the messages about "the Lord" which Plaintiffs received.

The facts pled by Plaintiffs establish that Ytel is a common carrier exempt from liability. Plaintiffs have not alleged any facts that give rise to an inference that Ytel was so closely involved in placing calls or text messages that Ytel can be deemed to have made that call or text, let alone that Ytel knew that MJM was making allegedly illegal calls and texts without prior express consent.  The facts alleged by Plaintiffs establish that MJM, *not Ytel*, controlled and initiated the making of the calls and sending of the texts at-issue, including deciding the who, what, where, when and how of such calls and texts.  Ytel can therefore have no liability under the TCPA.

For these reasons, and as discussed more fully herein, Plaintiffs' FAC should be dismissed without further leave to amend.

## II.     SUMMARY OF ALLEGATIONS

### A.     Yakim Manasseh Jordan and Manasseh Jordan Ministries

Yakim Manasseh Jordan is an evangelical prophet and founder of Manasseh Jordan Ministries.  (FAC, ¶ 38.)  MJM engages in a "pay for prayer" business model and seeks donations from his followers via text messages and prerecorded telephone calls.  (*Id*., ¶¶ 38-41.)

### B.     Ytel

Plaintiffs allege that Ytel is a "cloud-based text messaging and calling system" that provides its customers with a platform "for the creation and execution of telemarketing and text messages." (*Id*., ¶¶ 1, 16.)  In their FAC, Plaintiffs say that Ytel offers its customers (1) a "voice broadcast feature" where a user is able to upload a recording and send it to call recipients (*id.,* ¶ 17); and (2) a "SMS broadcast" feature where a user is able to "compos[e] and send[] text messages" to a recipient's mobile phone (*id.*, ¶¶ 20-21).  Users are able to upload a list of contacts to dial.  (*Id.*, ¶ 21; *see also,* Figure 2.)  While Plaintiffs' FAC continues to allege in a barebone fashion that Ytel's system "has the capacity to produce numbers to be messaged, using a random or sequential number generator, and to dial such numbers", these allegations are contradicted by the publicly available

information contained on Ytel's website.1F[2] (*Id.*, ¶ 21.) In fact, Ytel provides numbers that its customers can place outbound calls from, *not to*. (*See* https://www.ytel.com/products, last visited January 30, 2020.)

### C. Plaintiffs' Claims

Having failed to collect on the default judgment entered in the prior lawsuit against MJM, Plaintiffs now sue Ytel claiming that it "partners" with MJM and that it "allowed" MJM to make pre-recorded calls and send text messages "without first obtaining prior express consent from consumers," in violation of the TCPA. (FAC, ¶ 28.) Plaintiffs go on to allege that Ytel "played an integral role" in MJM's "spamming" of consumers' phones. (*Id.,* ¶ 36.)

De la Cabada claims to have received "large numbers of pre-recorded calls and text messages to her cellular phone from MJM" along with voicemails requesting the recipient dial a certain number so that a male voice can "tell you what Master Jesus has been whispering into my ear." (*Id.*, ¶ 49.) De la Cabada does not provide the dates or times of these texts or calls to provide Ytel with adequate notice of the offending conduct or to allow Ytel to evaluate a statute of limitations defense, nor does she allege that she ever called the number left in the voicemails. However, De la Cabada does admit that she previously filed a federal lawsuit against MJM for alleged TCPA violations and obtained a default judgment against MJM on March 22, 2019. (*Id*., ¶ 51.) Tellingly, however, Plaintiffs did not name Ytel in the MJM lawsuit.

Plaintiff Williams similarly alleges that on unspecified dates and times, she received "automated calls and texts from MJM… for years" that she conclusively claims were "knowingly

---

[2] Because Plaintiffs' FAC includes selective screenshots from Ytel's website, it is appropriate for Ytel to refer to, and for this Court to consider, other parts of Ytel's website for a more robust understanding of Ytel's business. The doctrine of incorporation by reference permits a district court to consider, as part of the complaint itself, documents whose contents are alleged in the complaint and whose authenticity no party questions. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019) (incorporation by reference is "a judicially-created doctrine that treats certain documents as though they are part of the complaint itself.") This is to prevent "plaintiffs from selecting only portions of documents that support their claims, while omitting portions that weaken—or doom—their claims." *Id*. Incorporation by reference is appropriate "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id*.

supported by Ytel." (*Id.*, ¶ 54.)

### D.     The 2016 *Molitor* Action

In February 2016, De la Cabada filed a lawsuit against Manasseh Jordan Ministries, Inc. and Yakim Manasseh Jordan in the U.S. District Court for the Northern District of Illinois, No. 1:16-cv-02106, entitled *Jeffrey Molitor, et al. v. Manasseh Jordan Ministries, Inc.*, *et al.* (the "*Molitor* Action"). (Dkt #11-1.) In that lawsuit, De la Cabada sought "to put a stop to the incessant and abusive spam robocalling practices [Manasseh and MJM] have perpetrated for years, ad nauseum, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227." (*Id.* at p. 1.) In the First Amended Complaint filed in the *Molitor* Action, De la Cabada alleged that MJM engaged in robo-calling using Mr. Jordan's voice. (*Id.* at ¶ 3.) Specifically, De la Cabada stated that "Manasseh, through MJM, placed thousands of [] prerecorded phone calls to the cellphones of consumers who did not consent to be called and who have *never* interacted with Defendants in any way whatsoever." (*Id.* at ¶ 31) (Emphasis in original.) De la Cabada went on to allege that "Manasseh directly participates in these calls by recording his voice and by directing MJM, over which he exercises full domination and control, to transmit these voice recordings through automated telephone calls…" (*Id.* at ¶ 32.)

Ultimately, after MJM failed to defend themselves, MJM's default was entered and De la Cabada proceeded to seek a default judgment. (*Molitor* Action, Dkt# 123.) In her Motion for Default Judgment, De la Cabada admitted that:

- MJM "went to work drumming up donations through a mass robocalling campaign";
- The recordings on the calls were "created by Defendant Manasseh, and 'nobody else'";
- MJM sent out calls featuring Mr. Jordan's prerecorded voice; and
- MJM "made calls to individuals" by using an "autodialing system, including by setting it to make a certain number of calls per hour, and by using it to call multiple phone numbers at once."

(*Id.* at p. 5.) On April 28, 2019, a default judgment was entered against MJM and in favor of, *inter alia*, De la Cabada. (*Molitor* Action, Dkt # 130.) The putative class was defined as persons who received calls or text messages "from MJM." (FAC, ¶ 57.)

## III. LEGAL STANDARD

To survive a motion to dismiss, a complaint must be plausible on its face; allegations that are "merely consistent" with a defendant's liability or that only suggest "the mere possibility of misconduct" do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 679 (2009). Dismissal may be based on the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Kwan v. Sanmedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017) (quotation marks omitted).

Consequently, a motion to dismiss should be granted when a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562, 570 (2007). Further, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997). Where the complaint fails to plead facts that raise a sufficiently plausible right to relief, it must be dismissed. *Twombly*, 550 U.S. at 570.

"A court may…consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## IV. THE FAC SHOULD BE DISMISSED.

### A. Plaintiffs Do Not Provide Clear Notice of the Conduct They Attribute to Ytel Because They Make Contradictory Allegations as to the Roles of Ytel and MJM.

Plaintiffs cite to 47 U.S.C. § 227(b) in their FAC. "The plain language of section 227(b)(1)(A)(iii) imposes liability upon persons that 'make' a telephone call or text." *Klein v. Just Energy Grp., Inc.*, No. 14-1050, 2016 WL 3539137, at *8 (W.D. Pa. June 29, 2016). "[M]any courts that have considered this provision have held that the verb 'make' imposes civil liability only on the party that places the call or text." *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-02440, 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015); *see also Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 135 (E.D.N.Y. 2015) ("By its terms, 47 U.S.C. § 227(b)(1)(A)(iii), assigns civil liability only to the party who 'makes' a call."); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d

147419.00602/122516588v.3                        5
NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

1292, 1301 (D. Nev. 2014) (associating the party who "made" the call with "the party who actually sent the text message"); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), *aff'd*, 582 F. App'x 678 (9th Cir. 2014) ("The plain language of the TCPA assigns civil liability to the party who 'makes' a call" and "[d]irect liability is inapplicable here as the parties do not dispute that the actual sender of the text was . . . a separate provider of text-message based services . . . ."); *see also Reese v. Marketron Broad. Sols., LLC*, No. 17-9772, 2018 WL 279633, at *2 (E.D. La. Jan. 3, 2018) (dismissing TCPA claims with prejudice where "[t]he complaint directs its allegations towards 'defendants' as a group without explaining any particular defendant's involvement… Because the notice pleading requirement of the Federal Rules of Civil Procedure entitles [e]ach defendant ... to know what he or she did that is asserted to be wrongful, allegations based on a theory of collective responsibility cannot withstand a motion to dismiss." (internal quotation omitted)).

Courts should be critical of a plaintiff's attempt to assert conclusory allegations, including in the context of TCPA claims. In *Melito*, for example, the court granted a motion to dismiss because the plaintiffs "fail[ed] to allege adequately that Experian [the moving defendant] actually sent any texts." *Id.* at *4. There, the plaintiffs alleged that Experian "caused texts to be sent on behalf of" co-defendant AEO, and that, as to each of the individual plaintiffs, both defendants were "responsible for sending" the text messages. *Id.* The plaintiffs' class allegations also alleged, in conclusory fashion, a class comprised of all persons who received a text "sent by Experian and/or a third party acting on [its] behalf." *Id.* The court saw through this smokescreen of bald assertions—describing the complaint as containing an "interesting mix of active and passive voice allegations," and noting "[t]he absence of an allegation of who actually 'made' or physically placed the text message"—and dismissed the complaint. *Id.*

Plaintiffs make contradictory allegations of who made or initiated the subject calls and texts. In the original complaint, Plaintiffs alleged that Ytel was vicariously liable for the offending calls and texts messages. (Compl., ¶ 68.) Yet in the FAC, Plaintiffs dropped their vicarious liability allegations against Ytel—suggesting that Plaintiffs believe Ytel is directly liable under the TCPA. And indeed, in certain places, Plaintiffs allege that Ytel called Plaintiffs. (*See* FAC, ¶ 67 ("Ytel made pre-recorded voice calls to Plaintiffs' and members of the Class's cellular telephones…."); ¶

78 ("Ytel made text message calls to Plaintiffs' and members of the Class's cellular telephones…."). But Plaintiffs also contend that MJM made or initiated calls and text messages:

- [D]espite being subject to an FCC citation and no fewer than sixteen separate lawsuits since 2013, <u>MJM continues to regularly bombard consumers with spam texts and calls</u>." (FAC, ¶ 5 (underline added));

- "<u>Manasseh</u> uses the same money-for-miracles storytelling techniques <u>in his prerecorded calls and messaging campaigns</u>. For example, he has told millions of call recipients, in his own prerecorded voice, 'the Lord spoke to me personally about you. I must speak to you. I'm going to pass the phone to my blessed assistant and he's [going to] give you may blessed number so that you can call me back so that you can hear this blessed word.'" (FAC, ¶ 38 (underline added));

- "<u>MJM told call recipients</u> that 'GOD is Exposing those that are for you and against you, ALL for YOUR GOOD Listen Click Prophetmanasseh4u.com." (FAC, ¶ 39 (underline added));

- "For several years, Plaintiff De la Cabada has received large numbers of pre-recorded calls and text messages to her cellular phone <u>from MJM</u>." (FAC, ¶ 49 (underline added));

- "In an effort to evade these harassing calls from MJM, De la Cabada blocked some of MJM's phone numbers. But, <u>MJM</u> circumvented Plaintiff De la Cabada's efforts and <u>continued to call and text</u> her from different phone numbers, including numbers with falsely localized area codes." (FAC, ¶ 50 (underline added));

- Though Ms. De la Cabada obtained a default judgment against MJM (FAC, ¶ 51) "[t]his measure did not deter <u>MJM</u> in the slightest, <u>as they continued to relentlessly call and text</u> De la Cabada well after she filed her claim." (FAC, ¶ 52 (underline added));

- "Williams received an automated text messages <u>from MJM</u> as recently as this past year, and an automated, pre-recorded call <u>from MJM</u> as recently as July 2019." (FAC, ¶ 54 (underline added));

- "<u>MJM</u> collaborated with Defendant Ytel to develop, maintain, and execute <u>its calling campaign</u>." (*Id.*, ¶ 68 (underline added); *see also* ¶ 79 (same quote).)

And yet in other places, Plaintiffs contend that Ytel and MJM made calls together:

- "Between 2015 and 2017 alone, Ytel and MJM placed over 160 million illegal robocalls to consumers around the country." (FAC, ¶ 5);

- "MJM, along with Ytel, continues to make harassing pre-recorded calls and sends text messages to consumers without first obtaining their prior express consent." (FAC, ¶ 48);

- "Ytel, together with MJM, placed pre-recorded voice calls to Plaintiffs' and the Class members' cellular telephones without their prior express consent." (FAC, ¶ 65);

- "Ytel, together with MJM, sent unwanted and unsolicited text messages to Plaintiffs' and the Class members' cellular telephone without their prior express consent." (FAC, ¶ 74);

Only one person can actually make or initiate a call or text message. Yet with these contradictory allegations, Ytel is left to guess as to who Plaintiffs contend actually made the subject calls and text messages—MJM or Ytel—and what role the other party played. Ytel should not be put to the further burden of this litigation, and the massive expense it will entail, when Plaintiffs are unable to plead the specific existence and role of the entity that made or initiated the allegedly offending calls and texts. *See Jackson*, 88 F. Supp. 3d at 135 (granting motion to dismiss because "the Court finds that the [p]laintiff has not plausibly alleged that [the defendant], as opposed to [the third-party marketer], 'made' the relevant text message.").

**B.    The Facts Pled by Plaintiffs Do Not Establish that Ytel is Directly Liable.**

If it is in fact Plaintiffs' belief that Ytel made or initiated the subject calls and text messages, the facts which Plaintiffs advance do not support their belief. In fact, the facts show the opposite: that MJM made or initiated the calls and texts.

As Plaintiffs acknowledge in Paragraphs 67 and 78 of the FAC, in considering who is the makers or initiator of a call, the FCC considers "1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7980 ¶ 30 (2015) ("2015 FCC Declaratory Ruling").

The 2015 FCC Declaratory Ruling is instructive. There, the FCC compared three petitions and ruled that two entities were maker/initiators and one was not. To begin, the FCC determined that YouMail does not make or initiate a call when one of the app users avails himself/herself of an

optional service to send an automatic text in response to a voicemail. *Id.* at 7981, ¶ 31.  The FCC reasoned that "YouMail is a reactive and tailored service; in response to a call made to the app user, YouMail simply sends a text message to that caller, and only to that caller.  YouMail exercises no discernible involvement in deciding whether, when, or to whom an auto-reply is sent, or what such an auto reply says, nor does it perform related functions, such as pre-setting options in the app, that physically cause auto-replies to be sent." *Id.* at 7981, ¶ 32.  The FCC also ruled that TextMe, whose app allows users to send invitational text messages to contacts in their phone's address book, is not a maker/initiator because users must go through a multi-step process which includes tapping a button that reads "invite your friends", choosing whether to invite all friends or only certain contacts, and sending the text by selecting another message. *Id.* at 7983-84, ¶ 36.  The FCC reasoned that "the app user's actions and choices effectively program the cloud-based dialer to such an extent that he or she is so involved in the making of the call as to be deemed the initiator of the call," and not TextMe.  In contrast to YouMail and TextMe, however, the FCC ruled that Glide is a maker/initiator.  "Glide automatically sent invitational texts of its own choosing to every contact in the app user's contact list with little or no obvious control by the user." *Id.* at 7983, ¶ 35.  "In this scenario, the app user plays no discernible role in deciding whether to send the invitational text messages, to whom to send them, or what to say in them." *Id.*

The facts alleged by Plaintiffs establish that Ytel is more like YouMail and TextMe than Glide.  Plaintiffs do not allege any facts which suggest that Ytel is the entity which actually placed the calls and sent the text messages to Plaintiffs.  For example, the fact that Plaintiffs found online job postings for an account manager whose job it was to "[o]verse assigned customer accounts and support customers in their business needs as related to Ytel's software products" or a product manager whose job it was to "[h]elp[ ] companies successfully build SMS and voice capabilities into their application" does not mean that Ytel actually took steps to dial Plaintiffs.  (FAC, ¶ 27 at Figures 4 & 5.)  Nor do Plaintiffs allege any facts which suggest that Ytel has any control over, or is even tangentially involved with, the design and the creation of the content of the text messages and prerecorded calls.  Nor can they.  It is absurd to suggest that Ytel, a "cloud-based text messaging and calling system" (FAC, ¶ 1), would at all benefit by drafting messages for the purpose of informing

Plaintiffs "what Master Jesus has been whispering into [MJM's] ear" (FAC, ¶ 49).

Plaintiffs' allegations are clear that MJM initiated the text messages and calls. MJM decided whether, when, and to whom to send the text messages and calls. Tellingly, in the *Molitor* Action, Ms. De la Cabada alleged "[t]he recordings on these calls were created by Defendant Manasseh, and 'nobody else.'" (*Molitor* Action, Dkt. # 123 at p. 5.) Plaintiffs' failure to explain how or why Ytel, and not MJM, is suddenly the one sending text messages encouraging Plaintiffs to call MJM to discuss "the Lord" is fatal to their FAC.

Plaintiffs' conclusory allegations make it clear that Plaintiffs have not made any plausible allegation of a prohibited action by Ytel. Plaintiffs' FAC is devoid of any allegations regarding Ytel's "involvement" in the alleged wrongful conduct. *Cf. Bauman v. Saxe*, No. 2:14-cv-01125-RFB-PAL, 2019 WL 591439, at *3 (D. Neb. Feb. 13, 2019) (denying motion to dismiss where plaintiff's complaint against a communication service platform included allegations that "Twilio's alleged involvement was to an extent that Twilio could be considered to have initiated the contact, … [and] that Twilio not only knowingly allowed [its client] to use their platform for automated text messages but actively helped [its client] bypass spam filters.") Accordingly, to the extent Plaintiffs' claims are premised on direct liability against Ytel, they should be dismissed.

### C. Ytel Is a Mere Common Carrier and Exempt from Liability.

The FAC establishes that Ytel is a common carrier exempt from TCPA liability. Generally, "users of [telecommunications] services, not the carriers providing the services, [are] held liable" under the TCPA. *Kauffman v. CallFire, Inc.*, 141 F. Supp. 3d 1044, 1047 (S.D. Cal. 2015) (*quoting In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8776 n.83 (1992)). Whether or not a party is a common carrier "is a relatively simple, two-part inquiry: (1) Does the entity hold itself out indifferently to all potential users or, if serving a legally-defined class, hold itself out indiscriminately to serve all within that class; and (2) Does the entity allow customers to transmit messages of their own design and choosing?" *Rinky Dink*, 2015 WL 778065, at *5.

Ytel is a common carrier. The FAC contains screenshots from Ytel's website describing the services provided by Ytel to its customers, indiscriminately. Specifically, Plaintiffs allege: Ytel is a

"cloud-based text messaging and calling system" that provides its customers with a platform "for the creation and execution of telemarketing and text messages" (FAC, ¶¶ 1, 16); Ytel offers its customers a "voice broadcast feature" where a user is able to upload a recording and send it to call recipients (*id.,* ¶ 17) and an "SMS broadcast" feature where a user is able to "compos[e] and send[] text messages" to a recipient's mobile phone (*id.*, ¶¶ 20-21); and that users are able to upload a list of contacts to dial (*id.*, ¶ 21; *see also,* Figure 2). Plaintiffs do not allege that Ytel's services are distinct amongst its customer base or that Ytel does not allow customers to transmit messages of their own design and choosing.

As a common carrier, Ytel is "not liable under the TCPA absent a 'high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions.'" *Rinky Dink, Inc. v. Elec. Merch. Sys.*, No. 13-1347, 2015 WL 778065, at *4 (W.D. Wash. Feb. 24, 2015) (quoting *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8779-80, ¶ 54 (1992)). "A 'high degree of involvement' exists where the broadcaster (1) controls the recipient lists; and/or (2) controls the content of the transmissions." *Rinky Dink*, 2015 WL 778065, at *7 (citing *Rules and Regulations Implementing the TCPA of 1991*, 68 F.R. 44144-01, 44169 at ¶ 138 (July 25, 2003)).

The FAC is devoid of any facts suggesting a "high degree of involvement" in the making and initiating of calls and messages by MJM. Plaintiffs do not allege, and it is not plausible, that Ytel decided who to dial or that Ytel drafted MJM's messages.

Nor do Plaintiffs allege facts to support their allegation that Ytel "knowingly allowed" MJM to use its platform for an unlawful purpose. The fact that De La Cabada sued MJM in the *Molitor* Action and supposedly told Ytel of the lawsuit in 2017 is a red herring. For a carrier to have "actual notice of an illegal" use, there needs to be a final factual finding that the customer in question is using the communication service unlawfully. Only after the carrier is notified of the final ruling can it possibly be liable, and only if the carrier refuses to prevent the subsequent transmission of messages adjudicated unlawful. *See Common Carrier Immunity Order*, 2 FCC Rcd 2819, ¶¶ 5, 9 (a common carrier can be potentially liable under this standard only if it had "actual notice" that the activity at-issue "has been adjudicated" to be unlawful, and the carrier fails to act.) Notice of

allegations in a lawsuit *which we never adjudicated finally on the merits* is insufficient.  *See Kauffman v. CallFire, Inc.,* 141 F. Supp. 3d 1044, 1050 (2015) (Rejecting notion that the defendant had notice of an "illegal activity" that would exempt it from being a common carrier because "a complaint is an *allegation* of an illegal act, not *notice* of an illegal act.") (Emphasis supplied).

Despite having amended their pleading in the face of Ytel's motion to dismiss the original Complaint, Plaintiffs have *still* not alleged facts demonstrating that Ytel is anything more than a common carrier under the TCPA.  Plaintiffs thus tacitly concede their inability to do so.  Accordingly, Plaintiffs' FAC should be dismissed as a matter of law.

## V. CONCLUSION

For the reasons stated herein, Ytel requests that Plaintiffs' FAC be dismissed with prejudice, and judgment entered in Ytel's favor.

DATED:  January 30, 2020             **BLANK ROME LLP**

By:  */s/ Ana Tagvoryan*
Ana Tagvoryan
Neeru Jindal
Harrison Brown
Attorneys for Defendant,
YTEL, INC.