L. Timothy Fisher (SBN 191626)
ltfisher@bursor.com
BURSOR & FISHER, P.A.
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Tel: 925.300.4455
Fax: 925.407.2700

Joseph I. Marchese (*pro hac vice* forthcoming)
jmarchese@bursor.com
Philip L. Fraietta (*pro hac vice* forthcoming)
pfraietta@bursor.com
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, NY 10019
Tel: 646-837-7150
Fax: 212-989-9163

*Counsel for Plaintiff and the Putative Class*

*Additional Counsel Listed on Signature Page*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAURA C. DE LA CABADA MORO and DEBORAH EVANS, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>YTEL, INC., a California corporation,<br><br>*Defendant.* | Case No. 3:19-cv-07178-JSC<br><br>Hon. Jaqueline Scott Corley<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date:        March 5, 2020<br>Time:       9:00 a.m.<br>Courtroom: F, 15th Floor<br><br>Complaint Filed: October 30, 2019 |

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................1

II. FACTUAL BACKGROUND................................................................................................2

    A. Ytel Provides Entities the Tools They Need to Violate the TCPA ........................2

    B. Ytel Knowingly Enables Manasseh's TCPA-Violating Conduct ...........................3

    C. Plaintiffs Are Targeted By the Manassseh-Ytel Campaigns ..................................4

III. ARGUMENT..........................................................................................................................5

    A. The FCC and Multiple Courts Have Ruled That Calling and Messaging Platform Companies Like Ytel Can Be Liable Under the TCPA..............................6

    B. Ytel Violates the TCPA By Knowingly Aiding Manasseh ....................................8

    C. Plaintiffs' Theory of Liability is Clear, and Not Contradictory...........................11

IV. CONCLUSION....................................................................................................................12

# TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................................5

**United States Circuit Court of Appeals Cases:**

*Altmann v. Republic of Austria*,
    317 F.3d 954 (9th Cir. 2002)............................................................................................12

*Cahill v. Liberty Mut. Ins Co.*,
    80 F.3d 336 (9th Cir. 1996)................................................................................................5

*Geddes v. United Fin. Grp.*,
    559 F.2d 557 (9th Cir. 1977)............................................................................................10

**United States District Court Cases:**

*Asher & Simons, P.A. v. j2 Glob. Canada, Inc.*,
    977 F. Supp. 2d 544 (D. Md. 2013)....................................................................................7

*Bauman v. Saxe*,
    No. 2:14-cv-01125-RFB-PAL, 2019 WL 591439 (D. Nev. Feb. 13, 2019)..............7, 8, 11

*Huricks v. Shopkick, Inc.*,
    No. C-14-2464 MMC, 2014 WL 3725344 (N.D. Cal. July 24, 2014) ..............................12

*Hurley v. Messer*,
    No. CV 3:16-9949, 2018 WL 4854082 (S.D.W. Va. Oct. 4, 2018) ...............................7, 8

*Kauffman v. CallFire, Inc.*,
    141 F. Supp. 3d 1044 (S.D. Cal. 2015)..............................................................................10

*Linlor v. Five9, Inc.*,
    No. 17CV218-MMA (BLM), 2017 WL 2972447 (S.D. Cal. July 12, 2017) ...............6, 10

*Molitor v. Manasseh Jordan Ministries, et al.*,
    No: 1:16-cv-02106 (N.D. Ill.)...................................................................................5, 9, 12

*Thompsons Film, LLC v. Kappen*,
    No. 13-CV-0126-TOR, 2014 WL 4384029 (E.D. Wash. Sept. 3, 2014) ..........................10

*Wick v. Twilio, Inc.*,
　　No. C16-00914RSL, 2017 WL 2964855 (W.D. Wash. July 12, 2017) ........................... 7, 8

**Rules and Statutory Provisions:**

47 U.S.C. § 227 ............................................................................................................... 1, 7

Fed. R. Civ. P. 9 ..................................................................................................................

**Other Authorities:**

*Getting Phone Calls Seeking Divine Assistance? You May Be A Victim of 'Spoofing'*, L.A. TIMES,
　　https://lat.ms/3ba19yE (May 3, 2016) ............................................................... 4, 9

*In re Dish Network, LLC*,
　　28 FCC Rcd. 6574 (2013) ........................................................................................ 6

*In re Rules and Regulations Implementing the Tel. Consumer Prot. Act 1991*,
　　30 FCC Rcd. 7961 (2015) ....................................................................... 6, 8, 10, 11

*In the Matter of Enforcement of Prohibitions Against the Use of Common Carriers for the Transmission of Obscene Materials*,
　　2 FCC Rcd. 2819 (1987) ....................................................................................... 10

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
　　31 FCC Rcd. 88 (2016) ........................................................................................... 7

Khristina Narizhnaya, *'Prophet' Harassing NYers With Robocalls Demanding Cash: Suit,* N.Y. POST,
　　https://bit.ly/2OmPGlR (Mar. 12, 2016) ................................................................ 4

Michael Marks, *How Pay-to-Pray Ministries Use Robocalls to Collect Offerings,* TEX. STANDARD,
　　https://bit.ly/2vMi4Y4 (Sept. 19, 2016) ................................................................. 4

## I. INTRODUCTION

Several years ago, the Federal Communications Commission ("FCC") faced a difficult problem that continues to plague the nation to this day. A new generation of robocallers was on the rise and able to violate the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* to degrees never seen before using Internet-enabled calling and texting platforms. However, the platforms themselves were often incorrectly treated as immune from liability under the TCPA's exception for common carriers. Recognizing the problem, the FCC—in a series of Orders in 2013, 2015, and 2016—clarified that the TCPA does in fact impose liability on entities that knowingly facilitate illegal robocalling and robotexting campaigns on their platforms.

Such is the case here. Defendant Ytel, Inc. ("Ytel") provides a web-based calling and texting platform, used for years by Manasseh Jordan Ministries ("Manasseh"), a sham ministry and serial TCPA violator. If this were the whole story, no liability would lie against Ytel—but it's not. Ytel did not merely make its services available to Manasseh. As Laura C. De la Cabada ("De la Cabada") and Debra Williams ("Williams," and together with De la Cabada, "Plaintiffs") allege in their First Amended Class Action Complaint ("FAC"), Ytel *actively* oversaw Manasseh's robocalling campaigns through its employees, provided Manasseh with advanced technology whose sole purpose was to evade spam-blocking filters and trick consumers into answering their phones, and sold Manasseh lists of telephone numbers to spam. As such, and consistent with the FCC's guidance, it may be held liable for "initiating" calls and texts in violation of the TCPA.

Ytel moves to dismiss the FAC, despite having knowingly allowed—and enabled—a third-party to use its platform to bombard consumers with an unprecedented, ongoing, and well-publicized campaign of spam phone calls and text messages. This is exactly what the 2013, 2015, and 2016 FCC Orders address. Nevertheless, Ytel claims utter confusion: the FAC has apparently "le[ft it] guessing" about its alleged role in the calls and texts at issue, (Mot. at 1). It also makes a number of flawed arguments about why it cannot be liable here, including by pointing to allegations it claims to be contradictory (but are not). Ytel's core argument is that, as a provider of communication services, it falls within the TCPA's exemption for common carriers and thus cannot be held liable. (Mot. at 10–12.) It does not, however, make a serious effort to engage with

the 2013, 2015, and 2016 FCC Orders or the case law developed around them, relying on flawed comparisons to various texting platforms that don't stand up to scrutiny.

In any event, the FAC plainly alleges that Ytel can be held liable for initiating illegal robocalls and texts at issue in this case, as it was involved in the calls to such a degree that it can be considered to have initiated them and had knowledge of their illegality. Specifically, Ytel (1) had actual knowledge that its client Manasseh was a widespread TCPA violator, and (2) concretely and substantially participated in the violations by overseeing Manasseh, selling it lists of phone numbers to contact, and giving Manasseh advanced technology to avoid spam-blocking filters and "spoof" local area codes. It is just as responsible for the spam calls and texts Plaintiffs received as Manasseh and may be held liable under the TCPA.

Ytel's arguments should be rejected and its Motion to Dismiss should be denied.

## II.   FACTUAL BACKGROUND

### A.   Ytel Provides Entities the Tools They Need to Violate the TCPA.

A seemingly constant bombardment of spam calls and texts is now an immutable fact of life in the United States. A 2019 FCC report estimated the annual rate of robocalls alone to be nearly 50 billion. (FAC ¶ 13.) This state of affairs is due in significant part to the rise of Voice-over-Internet-Protocol ("VoIP") services, which allow illegal calls to be placed *en masse* with little more than an Internet connection. (*Id.* ¶ 15; *id.* n. 3, at 14.)

Defendant Ytel is one such VoIP company. (*Id.* ¶ 15.) Ytel provides users with, essentially, a turnkey robocalling and robotexting system that—in its own words—allows businesses to contact "dozens, hundreds or thousands of people on-demand." (*Id.* ¶¶ 4, 17.) The system allows for both the uploading of a list of phone numbers, as well as the generation of random phone numbers to be contacted. (*Id.* ¶ 19.) This system is unquestionably an automatic telephone dialing system as to both calls and texts. (*Id.* ¶¶ 21–22.)

As Ytel says on its website, "[a] substantial challenge of SMS marketing is the fact that consumers receive more than 5,000 marketing messages every day. How many of those are actually following FTC and other government rules and regulations? It's hard to say, but we can assume that a large amount of companies don't follow regulations and send at their own leisure."

(*Id.* ¶ 24.) As such, Ytel claims to provide in-house experts to work with companies to ensure TCPA compliance. (*Id.* ¶ 26.) It also provides its partners with an account manager to help them operate Ytel's systems, oversee the telemarketing campaigns they execute, and assist in building SMS and calling functionalities into their apps. (*Id.* ¶ 27.)

Relevant here, this oversight leads to another result: assisting companies in creating mass robocalling and robotexting campaigns that inevitably violate the TCPA. First, Ytel provides clients with "short code[s]"—a 5 to 6-digit phone number used for texting campaigns—that it actively promotes on its website as "[n]ot subject to carrier filtering/blocking for heavy volume." (*Id.* ¶ 30.) Second, Ytel allows for the "spoofing" of outgoing telephone numbers to match a recipient's area code, or at least make it appear that the call is coming from somewhere relatively local. (*Id.* ¶¶ 32–33.) (internal quotations omitted.) Ytel also sells entities bulk lists of phone numbers to call by the dozens, or even hundreds, at a time. (*Id.* ¶¶ 34–36.)[1]

By providing its customers with these tools, Ytel enables mass illegal calling and texting to consumers without their consent. Far from "assum[ing] that a large amount of companies don't follow" the TCPA, Ytel knows that they are breaking the law, firsthand, and actively assists them in this effort. (*Id.* ¶¶ 24–26.)

**B.   Ytel Knowingly Enables Manasseh's TCPA-Violating Conduct.**

Manasseh presents perhaps one of the most egregious examples of Ytel's willful and knowing enablement of illegal robocalling and robotexting campaigns. The ministry is run by Yakim Manasseh Jordan, who claims to be a prophet and preaches the "prosperity gospel," *i.e.*, that his followers can purchase "favor[s]" from God by giving donations. (*Id.* ¶ 37.) Manasseh promotes his "money-for-miracles" message through prerecorded calls and text messages sent to consumers *en masse*. (*Id.* ¶ 38.) The extent of these illegal calling and texting campaigns cannot be overstated; one such campaign involved over *160 million* illegal robocalls being placed in a

---

[1]   After this lawsuit was filed, Ytel contacted Plaintiffs, through counsel, to complain that the screenshots in the Complaint were improperly taken from Ytel's website after creating an account and logging in, in violation of its user policies. While this was not true—the images were publicly available without the need to log in—it is telling that Ytel sought to hide its use of short codes, spoofing, and phone number lists.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS                    3

two-year period alone. (*Id.* ¶ 46.)

Ytel is, and for years has been, Manasseh's exclusive partner for its calling and texting campaigns. (*Id.* ¶ 41.) In this capacity, Ytel has played an "integral role" in Manasseh's campaigns, providing it with everything it could ever need to be one of the country's leading spam callers and/or texters. (*Id.* ¶ 36.) This has included—but is not necessarily limited to—providing Manasseh with spoofed telephone numbers, offering it custom short codes for text messages to avoid being blocked by recipients' cell phone carriers, offering other tools to "avoid built-in call blocking features," and selling Manasseh lists of hundreds of phone numbers at a time. (*Id.* ¶¶ 36, 39, 41.)

These illegal campaigns have hardly been a secret. Manasseh has been sued for violating the TCPA no fewer than sixteen times since 2013, agreeing to settle in one case and admitting in another that they have "sent prerecorded calls to people." (*Id.* ¶ 44.) The FCC issued a citation to Manasseh in 2016 for violating the TCPA. (*Id.* ¶ 43.) And Manasseh's conduct has been the subject of numerous public reports over the past decade—both in California and elsewhere in the United States—that chronicle its flagrant bombardment of the public with its prosperity gospel messages.[2]

C. **Plaintiffs Are Targeted By the Manassseh-Ytel Campaigns.**

Plaintiffs De la Cabada and Williams have no relationship with Manasseh or Ytel, yet both have been bombarded with spam calls and texts as a part of the campaigns at issue. (*Id.* ¶¶ 52–54, 56.) Both have received short-code texts from Manasseh that were created using Ytel's platform. (*Id.* ¶¶ 52, 80.) And both have received calls from telephone numbers with spoofed area codes that were placed using Ytel's system. (*Id.* ¶¶ 69.)

Plaintiffs have tried stop these relentless contacts. Williams has tried to verbally tell Manasseh to stop contacting her—to no avail. (*Id.* ¶ 55.) De la Cabada went so far as to file a

---

[2]   (FAC ¶ 44 n. 12); *see also, e.g.*, *Getting Phone Calls Seeking Divine Assistance? You May Be A Victim of 'Spoofing'*, L.A. TIMES, https://lat.ms/3ba19yE (May 3, 2016); Khristina Narizhnaya, *'Prophet' Harassing NYers With Robocalls Demanding Cash: Suit*, N.Y. POST, https://bit.ly/2OmPGlR (Mar. 12, 2016); Michael Marks, *How Pay-to-Pray Ministries Use Robocalls to Collect Offerings*, TEX. STANDARD, https://bit.ly/2vMi4Y4 (Sept. 19, 2016).

PLAINTIFFS' OPPOSITION TO
MOTION TO DISMISS                                        4

lawsuit against Manasseh in 2016, ultimately obtaining a default judgment against it on March 22, 2019. (*Id.* ¶ 51; *see also Molitor v. Manasseh Jordan Ministries, et al.*, No: 1:16-cv-02106, dkt. 130 (N.D. Ill. Apr. 28, 2019).) This had no effect; the calls and texts continued unabated. (FAC ¶ 52.) This was despite the fact that, during the course of the *Molitor* lawsuit, De la Cabada's counsel—the undersigned—provided Ytel with "repeat notice of the lawsuit, the substance of its allegations, and extensive evidence of [Manasseh's] overall conduct" as described in the present FAC. (*Id.* ¶ 47.) Ytel was subpoenaed in connection with that lawsuit for "documents and additional third parties associated with" Manasseh. *Molitor*, dkt. 42 at 1–2. Further, during that lawsuit, Manasseh's counsel indicated that all calling list removal requests sent in by robocall recipients "go to the Ministry's vendor, Ytel[.]" *Id.*, dkt. 22-2 at 5.

## III.  ARGUMENT

A complaint survives a Rule 12(b)(6) motion to dismiss when it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Detailed factual allegations are not required, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a Rule 12(b)(6) motion, a court accepts as true all allegations of material fact and construes them in the light most favorable to the plaintiff. *Cahill v. Liberty Mut. Ins Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

The gist of Ytel's motion is this: no matter how many hundreds of millions of calls and texts were sent over Ytel's calling platform, the company was none the wiser and had no role in it. But Ytel arrives at this conclusion by ignoring numerous allegations in the FAC to the contrary, as well as critical FCC Orders describing how platforms like Ytel's can be liable for their knowing role in a third-party's TCPA violations. Beyond that, Ytel's motion is a mix of red herrings and non-issues. As the Court will see, the only issue here is whether the FAC adequately alleges Ytel knowingly allowed and assisted a flagrant, repeat TCPA violator in conducting illegal marketing campaigns using its calling and texting platform. It does.

As such, the Court should reject Ytel's arguments and deny its motion.

PLAINTIFFS' OPPOSITION TO
MOTION TO DISMISS
5

### A. The FCC and Multiple Courts Have Ruled That Calling and Messaging Platform Companies Like Ytel Can Be Liable Under the TCPA.

Initially, Plaintiffs wish to note several things Ytel conspicuously *does not* challenge in its motion. Ytel does not challenge that it partnered with Manasseh as part of the campaign in which 160 million robocalls were made in just two years. (FAC ¶ 46.) It does not dispute that Manasseh engaged in such a campaign using an autodialer that it supplied, and did so without obtaining Plaintiffs' consent to be called. (*Id.* ¶¶ 36, 42–43.) And, tellingly, Ytel says nothing about the allegation that it continues to work with Manasseh *to this day*—nor has it sought to engage Plaintiffs' counsel on this point despite, again, making numerous other inaccurate accusations about Plaintiffs' and their counsel's pursuit of the claims in question here.

Ytel claims that it cannot be held liable under the TCPA because it is a common carrier. Though it is generally true that TCPA liability does not extend to so-called "common carriers" who merely provide a platform for making calls and/or text messages, *Linlor v. Five9, Inc.*, No. 17CV218-MMA (BLM), 2017 WL 2972447, at *4 (S.D. Cal. July 12, 2017), recent, binding Orders from the FCC establish that Ytel cannot merely cry "common carrier!" and escape TCPA liability altogether.

The TCPA prohibits entities from "initiating" pre-recorded marketing calls and text messages without obtaining prior express consent. But as the FCC first noted in 2013, the TCPA does not define the term "initiate." *In re Dish Network, LLC*, 28 FCC Rcd. 6574, ¶ 26 (2013). The FCC thus expanded on this in a subsequent ruling, explaining that "initiat[ing]" a telephone call may include a variety of factual circumstances, requiring analysis of (1) "who took the steps necessary to physically place the call"; and (2) "whether another person or entity was so involved in placing the call as to be deemed to have initiated it." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act 1991*, 30 FCC Rcd. 7961, 7980, ¶ 30 (2015). Regarding the second factor, the FCC stated that, where an entity—like Ytel—offers a calling platform for others to use, it will consider a third factor: whether the entity "knowingly allowed [their] client(s) to use that platform for unlawful purposes[.]" *Id.* This ruling was further expanded in 2016 to cover text messaging services. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot.*

PLAINTIFFS' OPPOSITION TO
MOTION TO DISMISS

6

*Act of 1991*, 31 FCC Rcd. 88, 91 (2016) (clarifying that "text broadcasters can be liable for TCPA violations" based on an analysis of the "totality of the facts and circumstances surrounding the placing of a particular call.") (emphasis omitted). Because the TCPA is within the FCC's jurisdiction to administer, and because Congress has delegated to the FCC authority for "prescrib[ing] regulations to" implement it, 47 U.S.C. § 227(b)(2), these regulations are binding. *See generally Asher & Simons, P.A. v. j2 Glob. Canada, Inc.*, 977 F. Supp. 2d 544, 548–50 (D. Md. 2013).

Subsequent court decisions have elaborated on these FCC Orders, demonstrating circumstances where an otherwise protected entity can be held liable for allowing a TCPA violator to use its platform:

- In *Hurley v. Messer*, the court considered whether two VoIP service providers could be held liable for providing calling services to an alleged TCPA violator. No. CV 3:16-9949, 2018 WL 4854082, at *4 (S.D.W. Va. Oct. 4, 2018). The VoIP providers argued—as VoIP provider Ytel does here—that they were simply "passive conduit[]" and could not have initiated the calls at issue. *Id.* The *Hurley* court rejected this argument, relying on allegations that the providers "offered a calling platform for others to use," "knew about the illegal conduct," and "had a right to control the conduct" to an extent, but allowed the robocalls to continue anyway. *Id.*

- In *Wick v. Twilio, Inc.*, the court considered whether a messaging platform could be held liable for providing texting services to a TCPA violator. No. C16-00914RSL, 2017 WL 2964855, at *4 (W.D. Wash. July 12, 2017). The court found sufficient allegations that Twilio assisted in creating messages to consumers, determined the number the message would be sent from in order to "prevent messages from being filtered" or to "mask the source of the calls," that Twilio chooses the order and timing of messages, and that Twilio admitted its platform can be used to violate the TCPA. *Id.*

- In *Bauman v. Saxe*, another lawsuit against Twilio, a court considered allegations that Twilio collaborated as to the "development, implementation, and maintenance" of an illegal telemarketing program. No. 2:14-cv-01125-RFB-PAL, 2019 WL 591439, at *1 (D. Nev. Feb. 13, 2019). The *Bauman* court found sufficient allegations that Twilio was a critical partner of a third-party TCPA violator, including by actively providing it with all of the tools it needed to bypass spam filters, carry out a telemarketing campaign, and violate the TCPA *en masse*. *Id.* at *1, *3.

*Hurley*, *Wick*, and *Bauman* are on point and show why Plaintiffs' allegations state a claim against Ytel under the fact-specific inquiry required. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 31 FCC Rcd. at 91.

### B. Ytel Violates the TCPA By Knowingly Aiding Manasseh.

With respect to the FCC's first and second factors for liability: Plaintiffs allege that Ytel's direct and critical involvement in the oversight and facilitation of the Manasseh marketing campaign provide Manasseh a turnkey VoIP robocalling and robotexting operation. (FAC ¶ 17.) As in *Bauman*, Ytel supervised Manasseh's development of this campaign by providing an account manager to help operate Ytel's systems and oversee the campaign. (*Compare id.* ¶ 27 *with* Bauman, 2019 WL 591439, at *1 (Twilio assigned a "mobile marketing campaign specialist" to the third-party to "ensure that the telemarketing text message program was a success".)) Ytel sold Manasseh lists of hundreds of phone numbers at a time to call and/or text, which it then used for its campaigns. (FAC ¶¶ 34–36.) And critically, Ytel willingly gave Manasseh the TCPA violator's holy grail: spoofed phone numbers and short codes used to bombard consumers—including Plaintiffs—with unwanted contacts. (*Id.* ¶¶ 30, 32–33, 52–55.) In these ways, Ytel was deeply involved in the marketing campaign that affected Plaintiffs; it supervised its creation and execution through its employees and provided Manasseh with the tools needed to carry it out. *Bauman*, 2019 WL 591439, at *1, *3 (providing spam filter-bypassing tools supports direct TCPA liability); *Wick*, 2017 WL 2964855, at *4 (providing technology to mask source of calls supports direct TCPA liability). Further, Ytel had the right to control Manasseh's conduct—it could have simply not provided Manasseh with phone number lists, short codes, and spoofed outgoing phone numbers. It could have also stopped from Manasseh from using its platform until Manasseh demonstrated that it had obtained the appropriate consent from the individuals it was calling and texting (including Plaintiffs). *Hurley*, 2018 WL 4854082, at *4 (VoIP provider not "passive conduit[]" where it had some ability to control third-party's conduct).

The third FCC factor assesses whether Ytel "knowingly allowed [their] client(s) to use that platform for unlawful purposes." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act 1991*, 30 FCC Rcd. at ¶ 30. Knowledge can be "alleged generally" and Plaintiffs are confident that the full scope of Ytel's knowledge of Manasseh's TCPA-violating conduct will become readily apparent through discovery. Fed. R. Civ. P. 9(b). Even so, the FAC contains more than sufficient evidence of Ytel's knowledge of Manasseh's illegal conduct for at least two years

PLAINTIFFS' OPPOSITION TO
MOTION TO DISMISS                                8

prior to the filing of the original complaint in this matter.

First, the account managers and compliance experts Ytel is alleged to have provided would have given it direct knowledge of how Manasseh was using Ytel's platform. (FAC ¶¶ 26–28.) Second, Ytel provided Manasseh with the tools it needed to execute a mass illegal robocalling and robotexting campaign, including an autodialing system, short codes, and spoofed phone numbers. (*Id.* ¶¶ 17, 19, 21–22, 30–36.) Ytel cannot reasonably argue that it had no idea such tools would be used to make TCPA-violating calls and/or texts, as they are uniquely designed to evade spam-blocking technology and trick consumers into answering the phone. (But at minimum, these allegations are sufficient to establish knowledge in conjunction with other allegations in the FAC—*e.g.*, that Ytel understood how Manasseh's business model worked, that the business relied on illegal robocalling, and that Ytel oversaw Manasseh's conduct through employees. (*Id.* ¶¶ 26–28, 41–42, 46–47.)) Third, Manasseh's conduct has been acknowledged publicly on numerous occasions, earning it an FCC Citation in 2016 and countless negative news reports, including an article in the *L.A. Times*. (*Id.* ¶ 43; *see also supra* note 11.) Last, counsel for Plaintiffs alerted Ytel of Manasseh's unlawful conduct in 2017, providing it with notice of the *Molitor* action and evidence of Manasseh's illegal robocalling and robotexting activities. (FAC ¶¶ 47-48.) Together, this body of evidence is more than sufficient to show that Ytel knew that Manasseh was violating the TCPA, certainly at the pleadings stage of this case.

Ytel does not directly challenge nearly any of these allegations. The only thing Ytel seriously objects to is the legal sufficiency of the notice provided during the *Molitor* action, because "[n]otice of allegations in a lawsuit" not finally adjudicated on the merits does not amount to notice of an act—only an allegation. (Mot. at 11–12.) As noted, De la Cabada's counsel subpoenaed Ytel and alerted it to Manasseh's conduct in early 2017, providing it with notice of the *Molitor* lawsuit and "extensive evidence of the overall conduct" Manasseh had engaged in that violated the TCPA. (FAC ¶ 47; *Molitor*, dkt. 42, at 1–2.)[3] So, putting aside the substantial additional evidence of Ytel's knowledge described above, Ytel's argument is a red herring because De la Cabada's counsel

---

[3]    And as noted, counsel for Manasseh even said that calling list removal requests sent in by robocall recipients "go to the Ministry's vendor, Ytel[.]" *Molitor*, dkt. 22-2, at 5.

provided Ytel with "evidence" of Manasseh's TCPA-violating conduct, not just allegations. (FAC ¶¶ 47-48.) And perhaps more importantly, De la Cabada later obtained a default judgment against Manasseh, which amounts to a judicial admission of its liability under the TCPA. *Thompsons Film, LLC v. Kappen*, No. 13-CV-0126-TOR, 2014 WL 4384029, at *1 (E.D. Wash. Sept. 3, 2014) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)) (entry of default judgment constitutes admission of facts alleged in pleadings). This argument should be rejected, particularly at this early stage of litigation.[4]

Ytel also argues that the FAC's allegations make clear that it is a common carrier and therefore exempt from TCPA liability. Plaintiffs have addressed this above, insofar as they argue that Ytel cannot qualify for the common carrier exemption due to its direct role in the calling campaign at issue. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. at 7980 (common carrier exemption does not apply if entity was "so involved in placing the call[s] as to be deemed to have initiated it"). Further, the issue of whether an entity qualifies as a common carrier is routinely reserved for summary judgment. *See Linlor v. Five9, Inc.*, No. 17CV218-MMA (BLM), 2017 WL 2972447, at *4 (S.D. Cal. July 12, 2017) (collecting cases). Even so, to determine whether an entity is a common carrier, courts inquire: "(1) Does the entity hold itself out indifferently to all potential users or, if serving a legally-defined class, hold itself out indiscriminately to serve all within that class; and (2) Does the entity allow customers to transmit messages of their own design and choosing?" *Id.* Here, Plaintiffs allege that Ytel does *not* hold itself out indifferently to all users, but instead, actively assists users in generating the specific types of marketing campaigns they want. And in this case, Plaintiffs allege, Ytel actively oversaw and assisted Manasseh's illegal calling and texting campaign. As such, it did not hold itself out

---

[4] Ytel's cited authority does not support its argument in any event. The 1987 FCC Order it cites relates to common carrier obligations regarding obscene materials, not robocalling. *In the Matter of Enforcement of Prohibitions Against the Use of Common Carriers for the Transmission of Obscene Materials*, 2 FCC Rcd. 2819, 2820 (1987). The one summary judgment decision it cites in support is also inapposite and involves a notice of a single complaint (the one at issue in that case). *Kauffman v. CallFire, Inc.*, 141 F. Supp. 3d 1044, 1047 (S.D. Cal. 2015). Here, Ytel had *both* actual evidence of Manasseh's misconduct and *prior* notice of the underlying *Molitor* complaint.

indifferently, but instead uniquely tailored its services to the needs of Manasseh, and thus does not qualify for the common carrier exemption.

In the end, it is simply not credible for Ytel to claim it was clueless about Manasseh's TCPA violations and had no role in them, particularly given that the Manasseh campaign resulted in at least 160 million calls and text messages being sent through Ytel's platform in just a two-year period. At minimum, Plaintiffs have alleged enough in their complaint to survive a Rule 12(b)(6) motion on these issues.

### C. Plaintiffs' Theory of Liability is Clear, and Not Contradictory.

Finally, Ytel attempts to make much of what amounts to an exercise in semantics. According to Ytel, the FAC contains "contradictory" allegations about who is responsible for the illegal robocalls and texts at issue here. (Mot. at 5–8.) To support this, Ytel points to various allegations in the FAC discussing Manasseh's role in the calling and texting campaigns. (*Id.* at 7.) Irrespective of whether "[o]nly one person can actually make or initiate a call or text message" as a matter of physics, as a matter of law, it is not *at all* true that only one party can be held liable for "initiating" a call or text under the TCPA. (*Id.* at 8.) The FCC has explicitly said otherwise. (*In re Rules and Regulations Implementing the Tel. Consumer Prot. Act 1991*, 30 FCC Rcd. at 7980; *Bauman*, 2019 WL 591439, at *3.) Thus, there is nothing contradictory about allegations suggesting that both Manasseh and Ytel played critical roles in the calling and texting campaigns. This would be obvious by reading no further than the sixth paragraph of the FAC:

- "Ytel has violated the [TCPA] by knowingly permitting and facilitating" Manasseh's TCPA-violating conduct, (FAC ¶ 6);

- "Ytel . . . has direct and actual knowledge that entities like Manasseh . . . placed prerecorded calls and text messages to consumers nationwide without first obtaining the caller's consent. Still, Ytel knowingly facilitated these calls in violation of the TCPA." (*Id.* ¶ 25);

- "Plaintiff Williams . . . has received automated calls and texts from MJM (knowingly supported by Ytel) for years." (*Id.* ¶ 54.)

- Noting potential common questions under Fed. R. Civ. P. 23(a)(2) of "[w]hether Defendant knowingly allowed its client(s) to use its cloud calling platform for unlawful purposes," (*Id.* ¶ 59);

- Under the "totality of the circumstances test," "Ytel made pre-recorded voice calls

to Plaintiffs' and members of the Class's cellular telephones," (*Id.* ¶ 67);

- "Ytel knowingly joined its software with [Manasseh's] devices," provided it with various robocalling and robotexting tools, and "did so all while knowing that [Manasseh] was using its system" to violate the TCPA, (*Id.* ¶ 69);

- "Plaintiffs De la Cabada and Williams . . . pray for the following relief: . . . (d) An order declaring that Ytel knowingly allowed its client(s) to use its calling platform to place unsolicited calls in violation of the TCPA." (*Id.* at 21.)

Contrary to Ytel's contention that Plaintiffs fail to "explain how or why Ytel" can be held liable here, the FAC explicitly does so.

Ytel's undeveloped arguments about the significance of the *Molitor* action are also unavailing. The fact that Plaintiff De la Cabada did not name Ytel in her prior lawsuit has no effect on her ability to do so here, especially where she asserts a different theory of liability and given Ytel's lack of effort to protect its rights through that case. *Cf. Huricks v. Shopkick, Inc.,* No. C-14-2464 MMC, 2014 WL 3725344, at *3 (N.D. Cal. July 24, 2014) (quoting *Altmann v. Republic of Austria*, 317 F.3d 954, 971 (9th Cir. 2002) ("Where a party is aware of an action and chooses not to claim an interest, the district court does not err by holding that joinder was unnecessary.")) Ytel altogether ignores two other material points on this issue. First, with respect to Plaintiff De la Cabada, her individual claims in this action are not based on calls and texts that were at issue in Molitor. (See FAC ¶ 45). And second, as for Plaintiff Williams, she wasn't even a party to Molitor, making this line of argument entirely irrelevant as to her. This is simply not a basis upon which dismissal could rest. Because the FAC plainly identifies the theory of liability under which Plaintiffs seek to hold Ytel accountable, as well as the alleged conduct giving rise to Ytel's liability, the Court should reject this argument, too, and deny Ytel's motion.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order denying Defendant's Motion to Dismiss and providing such other and further relief that the Court deems reasonable and just.

\*          \*          \*

Respectfully submitted,

**LAURA C. DE LA CABADA** and **DEBRA WILLIAMS,** individually and on behalf of all others similarly situated,

Date: February 13, 2020

By: /s/ Daniel J. Schneider
 *One of Plaintiffs' Attorneys*

Benjamin H. Richman*
brichman@edelson.com
Daniel J. Schneider (admitted *pro hac vice*)
dschneider@edelson.com
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312-589-6370
Fax: 312-589-6378

L. Timothy Fisher (SBN 191626)
ltfisher@bursor.com
BURSOR & FISHER, P.A.
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Tel: 925.300.4455
Fax: 925.407.2700

Joseph I. Marchese*
jmarchese@bursor.com
Philip L. Fraietta*
pfraietta@bursor.com
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, NY 10019
Tel: 646-837-7150
Fax: 212-989-9163

*Counsel for Plaintiffs and the Putative Class*

**Pro hac vice* admission forthcoming