UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA C. DE LA CABADA, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>YTEL, INC.,<br><br>    Defendant. | Case No. 19-cv-07178-JSC<br><br>**ORDER RE: DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 21 |

Laura C. De la Cabada and Debra Williams (together, "Plaintiffs") bring this action on behalf of themselves and as a putative class action against Ytel, Inc. ("Ytel" or "Defendant"), alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (Dkt. No. 20.)[1] Now before the Court is Defendant's motion to dismiss the first amended complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] After careful consideration of the parties' briefing and having had the benefit of oral argument on March 5, 2020, the Court DENIES Defendant's motion because the complaint's allegations give rise to a plausible inference that Ytel is liable under the TCPA.

**BACKGROUND**

**I.    Complaint Allegations**

The gravamen of the complaint is that Ytel, "a cloud-based text messaging and calling system," knowingly facilitated millions of illegal robocalls and robotexts by Manasseh Jordan Ministries and Yakim Manasseh Jordan (together, "MJM") that Plaintiffs received without their

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (*See* Dkt. Nos. 6 & 11.)

consent. (*See* Dkt. No. 20 at ¶¶ 1-5.) MJM is "a 'ministry' and evangelizer of the so-called 'prosperity gospel'" that "partnered with Ytel" to make the calls and send the texts at issue. (*Id.* at ¶ 5.) MJM has been "subject to an FCC citation and no fewer than sixteen separate lawsuits since 2013," yet continues its calling and text messaging campaigns "in exclusive partnership with, and with the knowing consent and assistance of, . . . Ytel." (*Id.*) Plaintiffs allege that Ytel thus violated the TCPA by "knowingly permitting and facilitating this conduct to persist, allowing [its] call platform to be used to effectuate this conduct, and by being substantially involved in placing the spam calls and texts Plaintiffs continue to receive to this day." (*Id.* at ¶ 6.)

### A. The Ytel Systems

Ytel provides its customers with calling and text messaging systems that constitute "automatic telephone dialing system[s]" and are capable of delivering prerecorded voice messages and text messages to consumers' telephones. (*Id.* at ¶ 22.) The systems have "the capacity to produce the numbers to be called, using a random or sequential number generator, and to dial such numbers." (*Id.* at ¶¶ 19, 21.) Ytel's website asserts that its "'in-house carrier compliance team works directly with [its] customers to ensure that they're sending messages and running campaigns that are compliant within the standards set by the FTC and TCPA.'" (*Id.* at ¶ 26 (quoting https://ask.ytel.com/ytel-api-sms).) Despite such oversight, however, "Ytel allowed pre-recorded calls and text messages to be sent without first obtaining prior express consent from customers." (*Id.* at ¶ 28.)

Ytel also "directly participates in executing and calling texting campaigns by bypassing carrier filtering and using deceptive calling tactics." (*Id.* at ¶ 29.) Specifically, Ytel's text messaging system provides "short codes," which are "5 to 6-digit phone number[s]," because they are best used for high volume text messaging campaigns and "are not subject to blocking or filtering by cell phone carriers for heavy volume calling." (*Id.* at ¶ 30 (citing https://ask.ytel.com/hubfs/Product/Sales%20Tools/Infographic/2018_03_ShortCodeInfographic.pdf).)[3] The Ytel system "also allows for the 'spoofing' of outgoing phone numbers to match the

---

[3] When considering a Rule 12(b)(6) motion to dismiss, a court ordinarily does not look beyond the four corners of the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). "A

2

recipient's local phone number," which "enables its partners to [e]stablish a local presence by using a phone number that matches your recipients [sic] area code." (*Id.* at ¶ 32 (alterations in original) (internal quotation marks omitted).)

**B.     The Communications**

"Ytel and its tools played an integral role in spamming of millions of phones with recorded messages and texts featuring automated messages from the so-called 'prophet' Yakim Manasseh Jordan." (*Id.* at ¶ 36.) Ytel provided MJM "with custom short codes to avoid being blocked by recipients' cell phone carriers," and "provided MJM with hundreds of local phone numbers in order to place pre-recorded calls to consumers, en masse, and avoid built-in call blocking features." (*Id.*) MJM "has told millions of call recipients, in his own prerecorded voice[:]

> the Lord spoke to me personally about you. I must speak to you. I'm going to pass the phone to my blessed assistant and he's [going to] give you my blessed number so that you can call me back so that you can hear this blessed word.

(*Id.* at ¶ 38 (alterations in original).) "In a Ytel-partnered text messaging campaign, MJM told call recipients that 'GOD is Exposing those that are for you and against you, ALL for YOUR GOOD Listen Click Prophetmanasseh4u.com.'" (*Id.* at ¶ 39.) The recipients of these calls and text

---

court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Here, the FAC cites among other things, Ytel's website. Defendant asserts that because the FAC "includes selective screenshots from Ytel's website, it is appropriate for Ytel to refer to, and for this Court to consider, other parts of Ytel's website for a more robust understanding of Ytel's business." (Dkt. No. 21 at 8 n.2.) Not so. At this stage the Court can only consider the web pages "directly quoted" in the FAC. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (taking "into consideration information posted on certain . . . webpages that [p]laintiffs referenced in the [c]omplaint," because "[p]laintiffs directly quoted the material posted on th[ose] web pages, thereby incorporating them into the [c]omplaint"); *see also Golden v. Home Depot, U.S.A., Inc.*, No. 1:18-cv-00033-LJO-JLT, 2018 WL 2441580, at *3 (E.D. Cal. May 31, 2018) (noting that a complaint's citation to a portion of a website "does not open the door to [d]efendant's use of unrelated portions of the same website in presenting a motion to dismiss"); *Greg Young Publ'g, Inc. v. CafePress, Inc.*, 2016 WL 6106752, at *2 (C.D. Cal. Jan. 25, 2016) (noting that although complaint quoted portions of defendant's website, "such allegations are not a blanket permission to incorporate unrelated information found elsewhere on [d]efendant's domain"). Indeed, incorporation by reference is improper for material that "merely creates a defense to the well-pled allegations in the complaint," because such material "does not necessarily form the basis of the complaint." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Accordingly, for purposes of the instant motion the Court considers as incorporated by reference only those portions of Ytel's website cited in the complaint.

3

1   messages "did not consent to be called by Manasseh, MJM, or Ytel." (*Id.* at ¶ 41.)

2   Plaintiffs received prerecorded calls and text messages attributed to MJM as recently as
2019. Plaintiffs "do[ ] not have a relationship with MJM or Ytel," and neither Plaintiff has
provided MJM or Ytel with her phone number or given them consent to call her phone. (*Id.* at ¶¶ 53, 56.)

### C. The *Molitor* Action

Plaintiff De la Cabada was part of a 2016 class action complaint against MJM for violating the TCPA and in March 2019 she "obtained an individual default judgment against Manasseh and MJM" for those violations. (*See id.* at ¶ 45; *see also Molitor, et al. v. Yakim Manasseh Jordan, et al.*, No. 1:16-cv-02106, Order of Default Judgment, Dkt. No. 30 (N.D. Ill. Apr. 29, 2019).)[4] Ytel was not a party to that action. *See generally Molitor*, No. 1:16-cv-02016, Class Action Complaint, Dkt. No. 11-1 (N.D. Ill. June 20, 2016). Plaintiff De la Cabada does not bring the instant case "based on any calls that were at issue in the prior case." (Dkt. No. 20 at ¶ 45.) This case concerns only "texts and calls she received after 2017." (*Id.*)

In early 2017, "counsel for Plaintiff De la Cabada provided Ytel with repeat notice of the [*Molitor*] lawsuit, the substance of the allegations, and extensive evidence of the overall conduct of MJM." (*Id.* at ¶ 47.) Thus, Ytel was aware of MJM's conduct, "[a]t the very least," in early 2017. (*Id.*) Further, "the FCC issued a citation letter to MJM in 2016" for making calls in violation of the TCPA, (*see id.* at ¶ 43 (citing https://www.fcc.gov/document/fcc-issues-citation-manasseh-jordan-robocalls-cell-phones), and "MJM and Manasseh have also been sued for violating the TCPA no fewer than *sixteen times* since 2013 alone," (*id* at ¶ 44). "[D]espite the perpetual legal action against it for making hundreds of millions of illegal calls and texts, MJM, along with Ytel continues to make harassing pre-recorded calls and sends text messages to consumers without first obtaining their prior express consent." (*Id.* at ¶ 48.)

//

---

[4] Courts may take judicial notice of "undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012). Accordingly, the Court takes judicial notice of the proceedings in *Molitor, et al. v. Yakim Manasseh Jordan, et al.*, No. 1:16-cv-02106 (N.D. Ill.).

4

**D. The Putative Class**

Plaintiffs bring this action individually and on behalf of two distinct classes of similarly situated individuals: (1) the "Pre-Recorded Voice Class," consisting of "[a]ll persons in the United States who received one or more pre-recorded calls from MJM"; and (2) the "Text Message Class," consisting of "[a]ll persons in the United States who received one or more text messages from MJM." (*Id.* at ¶ 57.)

## II. Procedural History

Plaintiffs filed their original complaint on October 30, 2019, bringing two TCPA claims against Ytel: (1) violation of 47 U.S.C. § 227(b)(1)(A)(iii) on behalf of Plaintiffs and the Pre-Recorded Voice Class; and (2) violation of same on behalf of Plaintiffs and the Text Message Class. (Dkt. No. 1 at ¶¶ 65-82.) Defendant moved to dismiss the complaint in December 2019, (Dkt. No. 14), and Plaintiffs filed the first amended complaint ("FAC" or "complaint") on January 16, 2020, (Dkt. No. 20), bringing the same TCPA claims asserted in the original complaint. Defendant filed the instant motion to dismiss two weeks later. (Dkt. No. 21.) The motion is fully briefed, (*see* Dkt. Nos. 23 & 24), and the Court heard oral argument on March 5, 2020.

## DISCUSSION

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Thus, a complaint "that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient, as is a complaint that "tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotation marks and citation omitted).

## I. The TCPA

Under section 227(b) of the TCPA it is unlawful for any person in the United States to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or

prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). "The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). A text message falls within the meaning of "to make any call" under the TCPA. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667, 193 L. Ed. 2d 571 (2016), *as revised* (Feb. 9, 2016).

"For a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-cv-03315-PJH, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018) (citing *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014)). Thus, liability under the TCPA can be either direct or vicarious. Here, Plaintiffs allege only direct liability; that is, they allege that Ytel "made" the challenged communications.

Defendant moves to dismiss the complaint on the grounds that Plaintiffs have not plausibly alleged that Ytel made the communications. The TCPA does not define the term "make" as used in 47 U.S.C. § 227(b)(1)(A); however, in July 2015, the FCC issued a declaratory ruling setting forth interpretative guidance for determining whether an entity "made" a call for purposes of TCPA liability. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961 (2015) ("2015 FCC Declaratory Ruling"), *rev'd in part on other grounds by ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). The FCC "look[s] to the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it[5], considering the goals and purposes of the TCPA." *Id.* at 7980.

---

[5] Plaintiffs allege that Ytel violated 47 U.S.C. § 227(b)(1)(A), which prohibits "making" certain calls to cellular telephone numbers. Section (B), 47 U.S.C.§ 227(b)(1)(B), prohibits "initiating" certain calls to landlines. The FCC, however, uses "to make a call" and "to initiate a call" interchangeably; that is, the terms have the same meaning and legal effect. *See In the Matter of Dialing Servs., LLC,* 29 F.C.C. Rcd. 5537, 5542 n.30 (2014); *Shamblin v. Obama for Am.*, No. 8:13-CV-2428-T-33 TBM, 2015 WL 1754628, at *4 n.2 (M.D. Fla. Apr. 17, 2015).

6

The Court concludes that while Plaintiffs have not plausibly alleged that Defendant *physically* made the communications, they have plausibly alleged that Defendant knowingly allowed MJM to use Ytel's "platform for unlawful purposes" and therefore Ytel "made" the calls. *See* 2015 FCC Declaratory Ruling, 30 FCC Rcd. at 7980-81.

**II.     Whether Ytel "Made" the Communications**

      **A.     Ytel did not Physically Make the Communications**

The complaint contains only conclusory allegations suggesting that Ytel physically made the calls and sent the text messages; specifically:

> Between 2015 and 2017 alone, Ytel and MJM placed over 160 million illegal robocalls to consumers around the country.
>
> . . .
>
> MJM, along with Ytel, continues to make harassing pre-recorded calls and sends text messages to consumers without first obtaining their prior express consent.
>
> . . .
>
> Ytel, together with MJM, placed pre-recorded voice calls to Plaintiffs' and the Class members' cellular telephones without their prior express consent.
>
> . . .
>
> Ytel made pre-recorded voice calls to Plaintiffs' and members of the Class's cellular telephones without obtaining prior express consent.
>
> . . .
>
> Ytel, together with MJM, sent unwanted and unsolicited text messages to Plaintiffs' and the Class members' cellular telephone without their prior express consent.
>
> . . .
>
> Ytel made text message calls to Plaintiffs' and members of the Class's cellular telephones without obtaining express consent.

(Dkt. No. 20 at ¶¶ 5, 48, 65, 74, 78.) These conclusory allegations do not give rise to a plausible inference that Ytel physically made the calls and sent the texts; indeed, the complaint contains multiple allegations that MJM actually made those communications. (*See id.* at ¶¶ 5, 38, 39, 54, 79.) Plaintiffs' opposition does not argue otherwise, and instead asserts that Ytel was so involved

7

in the calling and text messaging campaigns as to have initiated them.

**B. Whether Ytel was Otherwise Involved in the Communications**

In considering whether an entity was otherwise so involved with a communication as to be deemed to have made it for TCPA liability purposes, the FCC has identified several relevant factors, including: (1) who creates the content of the messages; (2) who decides "whether, when or to whom" a message is sent; (3) "the extent to which a person willfully enables fraudulent spoofing of telephone numbers or assists telemarketers in blocking Caller ID, by offering either functionality to clients"; and (4) "whether a person who offers a calling platform service for the use of others has knowingly allowed its client(s) to use that platform for unlawful purposes." *See* 2015 FCC Declaratory Ruling, 30 FCC Rcd. at 7980-81.

There are no factual allegations that plausibly support an inference that Ytel created the content of the communications, or determined when, how, and to whom the communications were sent. Drawing all inferences in Plaintiffs' favor, however, and based on the totality of the circumstances, Plaintiffs still plausibly allege that Ytel was so involved with the communications as to be deemed to have made them.

First, Plaintiffs allege that Ytel assists MJM with spoofing of telephone numbers and blocking of Caller ID. (Dkt. No. 20 at ¶¶ 34 ("Ytel provides random selections of numbers for bulk purchase."), 35 (alleging that with such phone numbers "telemarketers can place multiple phone calls, each from a different number, to avoid built-in phone number blocking systems," and "[e]ven if a consumer blocks one phone number, calls can continue unabated from hundreds of other numbers"), 36 ("Ytel provided MJM hundreds of local phone numbers in order to *place* pre-recorded calls to consumers, *en masse*, and avoid built-in call blocking features.") (emphasis added).)

Second, Plaintiff De la Cabada obtained a default judgment against MJM in the *Molitor* lawsuit, six months prior to the filing of this action. (*Id.* at ¶ 45.) Plaintiffs allege that "counsel for Plaintiff De la Cabada provided Ytel with repeat notice of the [*Molitor*] lawsuit, the substance of the allegations, and extensive evidence of the overall conduct of MJM." (Dkt. No. 20 at ¶ 47.) Plaintiffs also allege that MJM has been sued for TCPA violations 16 times since 2013 and was

8

cited by the FCC in 2016 "for making calls using an automatic telephone dialing system or an artificial or prerecorded voice without first obtaining prior express consent of the caller." (Dkt. No. 20 at ¶¶ 43, 44.) While Plaintiffs do not allege that they gave Ytel notice of these 16 other lawsuits and the 2016 FCC action, or of the default judgment itself, the complaint plausibly supports an inference that Ytel would have been aware of them given that Ytel advertises that its "in-house carrier compliance team works directly with our customers to ensure they're sending messages and running campaigns that are compliant and within the standards set by the FTC and TCPA." (*Id.* at ¶ 26 (quoting https://ask.ytel.com/ytel-api-sms).) In other words, given Ytel's advertised interest in ensuring its customers' TCPA compliance, the allegations support a reasonable inference that once Ytel was put on notice that its customer had been accused of violating the TCPA, it would have investigated whether there have been other lawsuits or actions taken against the customer, at a minimum by asking the customer itself so that Ytel could ensure that past mistakes are not repeated.

In sum, drawing all reasonable inferences in Plaintiffs' favor, the totality of the allegations support a plausible inference that Ytel was aware of MJM's repeated TCPA violations and nonetheless continued to facilitate them by offering MJM Ytel's platform, including with spoofing and call blocking functionality.

Defendant's citation to *Kauffman v. CallFire, Inc.*, 141 F. Supp. 3d 1044 (S.D. Cal. 2015), does not counsel a different result. There, the court on summary judgment rejected the plaintiff's argument that the defendant "had actual notice of an illegal use of its service and failed to take steps to prevent that use" based on the defendant's receipt of the complaint in that action and related cases. 141 F. Supp. 3d at 1049. The court stated that "[a] complaint is an allegation of an illegal act, not notice of an illegal act," and noted that one of the complaints had been voluntarily dismissed. *Id.* at 1049-50. The court found that "[a]n allegation of illegal activity that is subsequently withdrawn serves more to disprove than to prove the illegal nature of the activity, and such an allegation is certainly insufficient to qualify as notice that would give rise to TCPA liability." *Id.* at 1050. The court further found that the plaintiff did not show that the defendant "received a notice from the FCC regarding illegal activity or other comparable notice." *Id.* Thus,

the court determined that the plaintiff failed to demonstrate that the defendant "had sufficient notice of any illegal activity to render it an active participant in that activity." *Id.*

*Kauffman* is distinguishable. First, it was decided on summary judgment where the issue was whether the evidence supported a reasonable inference of actual notice. Here, in contrast, the question is whether the allegations support a reasonable inference of actual notice. For the reasons stated above, they do. Moreover, the subsequent default judgment against MJM in the *Molitor* action constitutes MJM's admission of facts alleged in the complaint in that action and established MJM's liability. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Thus, unlike the defendant in *Kauffman*, Ytel did not merely have notice of *allegations* of MJM's illegal activity; MJM's default in that action established its liability and Plaintiffs' allegations support a plausible inference that Ytel would have been aware of that liability.

Defendant's insistence that it is a common carrier and thus exempt from TCPA liability is of no moment. Defendant has not identified any authority holding that a common carrier cannot be held liable under the TCPA even if it has been found to have been so involved in the unlawful communications that it can be deemed to have made them. Indeed, the authority is to the contrary. *See, e.g., Linlor v. Five9, Inc.*, No. 17CV218-MMA (BLM), 2017 WL 2972447, at *4 (S.D. Cal. July 12, 2017) (noting that "[c]ommon carriers are not liable under the TCPA *absent* a high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions") (emphasis added) (internal quotation marks and citation omitted).

## CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's motion to dismiss.

This Order disposes of Docket No. 21.

**IT IS SO ORDERED.**

Dated: March 10, 2020

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge